# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KENNETH STURDIVANT,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:11-CV-1282-RDP |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Kenneth Sturdivant ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Act, and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. *See also*, 42 U.S.C. §§ 405(g) and 1383(c).

**I.      Proceedings Below**

This action arises from Plaintiff's applications for Title II Social Security disability, DIB, and Title XVI SSI both dated July 24, 2008 alleging a disability onset date of October 1, 2007, which was later amended to May 7, 2007. (Tr. 15, 34, 59-60, 107-16). These applications were denied by the Social Security Administration on December 11, 2008. (Tr. 63-67). On December 18, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 68-69). His request was granted and a hearing was held in Birmingham, Alabama on April 20, 2010. (Tr. 81, 27-58).

At the time of the hearing, Plaintiff was 48 years old and had earned a GED. (Tr. 36). Previous work experience included work as a spot welder, delivery driver, auto parts salesman,

construction laborer, farm supply material handler, bookstore clerk, and motel maintenance worker. (Tr. 36-37, 150). Plaintiff alleges that he suffers from nerve damage in his back, causing severe pain, right leg weakness (which in turn causes pain and falls), and bladder incontinence. (Tr. 34, 39, 44, 134). Plaintiff claims that these conditions prevent him from walking more than a city block, sitting or standing for longer than 15 minute periods, or lifting more than 10 pounds without difficulty. (Tr. 40-42). He also claims that these impairments require him to lie down for 30 minute intervals (three to four times each day), and catheterize himself (one to three times each week), which can take forty-five minutes to an hour. (Tr. 42, 45).

Records indicate that on April 27, 2007, Plaintiff was diagnosed with spinal stenosis of the lumbar region after admittance to Cooper Green Hospital. (Tr. 181-84). He underwent a laminectomy on L4-5 and L5-S2, as well as a L5-S1 microdiscectomy on May 8, 2007. (Tr. 195-201). The doctor attending Plaintiff's checkup on May 25, 2007 noted that Plaintiff "experienced marked improvement in his leg discomfort and [] [is] getting around quite well." (Tr. 206). Although Plaintiff was scheduled to undergo physical therapy after the May 2007 surgery, he missed his rehabilitation after serving 12 months in federal prison. (Tr. 50, 218).

On November 8, 2008, Dr. Malaika Hakima performed a consultative examination ("CE") of Plaintiff at the request of the Disability Determination Service ("DDS"). (Tr. 218-21). Dr. Hakima diagnosed Plaintiff with multilevel degenerative disk disease of the lumbar spine with lumbar radiculopathy and sciatica on the right, as well as urinary tract dysfunction secondary to neuropathy. (Tr. 221). Dr. Hakima also noted that Plaintiff could not squat or walk more than 10 feet unassisted and placed most of his weight and time on the lower left leg and extremities while dragging the right in his gait cycle. (Tr. 220). Muscle strength in Plaintiff's upper extremities and lower left were

estimated to be adequate, while the muscle strength in the lower right were estimated to be 4/5 and muscle bulk and tone were at 3/5. (Tr. 221).

On December 9, 2008, approximately two weeks before Plaintiff's insured status expired on December 31, 2008, Dr. Robert Heilpern issued a residual functional capacity ("RFC") assessment as a non-examining physician. Dr. Heilpern concluded that Plaintiff's allegations were partially credible since he suffered from medically diagnosed impairments that could reasonably produce some of the alleged symptoms, but not to the severity of a listing level impairment. (Tr. 222-29). Specifically, Dr. Heilpern concluded that Plaintiff can occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. (Tr. 223). For postural limitations, Dr. Heilpern concluded that Plaintiff could "Never" climb ladders, ropes or scaffolds, but could "Occasionally" perform all other postures. (Tr. 224).

On December 12, 2008, Plaintiff sought treatment at the Kirklin Clinic complaining of low back pain and weakness in his lower right extremity, but stating that the pain he had been experiencing in his lower right extremity was gone. (Tr. 239). The treating physician, Dr. Mamerhi Okor, recommended that Plaintiff undergo an operation to include lumbar spine internal fixation and fusion, which was agreed to and carried out a few weeks later. (Tr. 239, 241). After conducting Plaintiff's post-op checkup on February 20, 2009, Dr. Okor noted that he was "very pleased" with Plaintiff's progress, despite the fact that he still suffered from "severe back spasms," used a walker to walk in the clinic, and experienced trouble with his right knee which "tended to give out a fair bit." (Tr. 241). In a later checkup on June 8, 2009, Dr. Okor reported that Plaintiff "continues to do fine" and "his back pain has improved greatly since surgery." (Tr. 246). However, Plaintiff

complained of a new kind of pain which Dr. Okor thought might be related to Plaintiff's knee pathology. (*Id.*).

Plaintiff's latest examination on record occurred on December 7, 2009, when he returned to Dr. Okor complaining of severe low back pain, while stating that the pain in his right leg had "improved significantly." (Tr. 249). After reviewing Plaintiff's AP and lateral lumbar spine radiograph, Dr. Okor saw that Plaintiff's fixation remained intact without any evidence of hardware pullout or loosening, but qualified that he could not yet determine whether there was a satisfactory fusion. (Tr. 249). Dr. Okor concluded that he was "certainly not pleased" to hear of Plaintiff's continued low back pain, but opined that the pain could be attributable to arthritis and muscle spasms rather than his "surgically treated lumbar pathology." (*Id.*).

Plaintiff testified at the ALJ hearing in Birmingham, Alabama on April 20, 2010 and was represented by counsel. (Tr. 29). Vocational expert ("VE") John Long also testified at the hearing and was asked a series of hypothetical questions by the ALJ. In answer to the first hypothetical question, the VE testified that a person with the RFC to perform light to sedentary work with mild to moderate pain would not be able to perform Plaintiff's past relevant work, but would be able to perform other jobs in the national economy, such as cashier jobs, surveillance monitor tech jobs, and ampoule assembler jobs, all of which can exist in significant numbers in the state and national economy. (Tr. 56). In the second hypothetical posed to the VE, the ALJ reduced the RFC finding from Dr. Heilpern's assessment to one to ten pounds occasionally, but less than 10 pounds frequently and increased the pain level to moderately severe. (Tr. 56-57). The VE concluded that a person with such an RFC would not be able to perform any of the previously mentioned jobs. (Tr. 57). Lastly, in response to the third hypothetical, the VE concluded that a person with the same RFC as given

in the first hypothetical, a pain level of mild to moderate, and arthritic flare-ups that caused absences at least one day a week would not be able to maintain employment. (Tr. 57).

In the ALJ's decision, dated May 11, 2010, he determined that, although Plaintiff suffers from multiple severe impairments and cannot perform past relevant work, he still does not have the equivalent of a listed impairment and has the RFC to perform other work that exists in significant numbers in the state and national economy. (Tr. 17-23). Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Act, and thus ineligible for disability, DIB or SSI benefits. (Tr. 23). On February 18, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1) making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review. 42 U.S.C. §§ 405(g), 1383(c).

## II.     ALJ Decision

Disability under the Act is determined under a five-step analysis. 20 C.F.R. § 404.1520(a) (2012). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such

criteria are met, the claimant is declared disabled. If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. Before proceeding to steps four and five, the ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. 404.1520(f). If the claimant is determined to be capable of performing past relevant work, then he is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In this case, the ALJ determined that Plaintiff: (1) has not engaged in substantial gainful activity since the onset of his alleged disability on May 7, 2007; (2) does have severe medically determinable impairments—namely, multilevel degenerative disk disease of the lumbar region; status post lumbar fusion with muscle spasm and arthritis; right knee arthritis; and urinary tract dysfunction; but (3) does not have an impairment or combination of impairments as listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17, 19). After consideration of the record, the ALJ found that Plaintiff has the RFC to perform a limited range of sedentary to light work as defined in 20 C.F.R. §§ 404.1567(a), 404.1567(b), 416.967(a), and 416.967(b), except with the need for a sit/stand work option; the occasional ability to balance, stoop, kneel, crouch, and crawl; with no

work on ladders, ropes, or scaffolds. (Tr. 19). Based on the testimony of the VE, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 22). However, considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). The ALJ concluded that Plaintiff is not disabled as defined by the Act, and therefore not entitled to a period of disability, DIB or SSI. (Tr. 23).

### III.     Plaintiff's Argument

Plaintiff requests that the ALJ's decision be reversed and benefits awards, or in the alternative, that the case be remanded under sentence four for further proceedings and development of medical evidence. Plaintiff presents two arguments in favor of his position. First, Plaintiff asserts that the ALJ gave inappropriate weight to Dr. Heilpern's opinion because he was a non-examining physician whose opinion was rendered presurgery, and thus failed to give any weight to the opinions of examining physicians. (Pl.'s Mem. 5). Second, Plaintiff asserts that the ALJ did not properly evaluate the credibility of his subjective complaints of pain consistent with the Eleventh Circuit's Pain Standard because the ALJ did not articulate his reasons for failing to credit his pain testimony. (Pl.'s Mem. 9). Specifically, Plaintiff reiterates his argument that the ALJ did not accord any weight to the findings of Dr. Hakima, and thus failed to provide a comprehensive hypothetical to the vocational expert. (Pl.'s Mem. 9-10).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698,

701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be reversed and remanded.

**V.     Discussion**

    **A.     The ALJ Gave Inappropriate Weight to the Opinion of a Non-examining Reviewing Physician.**

Plaintiff argues that the decision below should be reversed because the ALJ gave too much weight to the opinion of Dr. Heilpern in determining his disability. (Pl.'s Mem. 5). Although the initial burden is on Plaintiff to prove that he can no longer perform past relevant work, the burden

shifts to the Commissioner "to establish that [Plaintiff] can perform other substantial gainful employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982). Because Plaintiff met his initial burden in proving his inability to perform past relevant work (Tr. 22), the burden shifted to the Commissioner to prove, by substantial evidence, Plaintiff's ability to perform other work.

As a general rule, the opinion of a non-examining physician is entitled to little weight, and by itself, does not constitute substantial evidence to support an administrative decision. *See Swindle v. Sullivan,* 914 F.2d 222, 226 n.3 (11th Cir. 1990). Accordingly, Dr. Heilpern's RFC assessment in this case should have been afforded little weight rather than the "great weight" given by the ALJ. (Tr. 21). Defendant correctly points out that SSR 96-6p allows for the opinions of non-examining sources to be granted the same weight as the opinions of treating sources if they are supported by an accurate and comprehensive record. (Def.'s Mem. at 6; citing *Schisler v. Sullivan*, 3 F. 3d 563, 568 (2d Cir. 1993)). However, the record indicates that Dr. Heilpern's assessment was outdated by the second surgery and inconsistent with the record on several points. Thus, the ALJ's decision to use Dr. Heilpern's opinion as the touchstone in this case is not supported by substantial evidence.

First, Dr. Heilpern's opinion contains several inconsistencies with subsequent findings by treating physicians. While the clinical objective findings on December 12, 2008 diagnosed Plaintiff with lumbar spine instability with mild angular instability at L4-L5 and cauda equina syndrome, Dr. Heilpern mentioned none of the above in his notes. (Tr. 223, 232-33). Similarly, Dr. Okor found lumbar instability at L4-L5, and noted that Plaintiff suffered from a new type of pain that could be attributed to arthritis and muscle spasms, while Dr. Heilpern's assessment mentioned none of the above. (Tr. 223, 242, 249). Generally, it is "[t]he ALJ's task to examine the evidence and resolve conflicting reports." *Wolfe v. Chater*, 86 F.3d 1072, 1079 (*citing Powers v. Heckler*, 738 F.2d 1151,

9

1152 (11th Cir. 1984) (per curium)). However, the ALJ's attempt to resolve the conflicting reports in this case falls flat. After summarizing the evidence of record, the ALJ argues that "the common denominator in this case is that no physician has offered an opinion that the claimant is restricted from the performance of all work." (Tr. 21). This rationale is without merit. Although all of the physicians in this case, except Dr. Heilpern, remained silent on Plaintiff's ability to work, "[s]uch silence is equally susceptible to either inference, therefore, no inference should be taken." *Lamb*, 847 F.2d at 703. In other words, when other medical records express no opinion regarding Plaintiff's ability or inability to work, the opinion of a non-treating, non-examining physician is not dispositive of that issue. *See Johnson v. Barnhart*, 138 Fed. Appx. 266, 270 (11th Cir. 2005); *Sharfaz v. Bowen*, 825 F.2d 278, 279-81 (11th Cir. 1987).

Secondly, Dr. Heilpern's opinion was issued on December 9, 2008, before Plaintiff was diagnosed with lumbar spine instability by Dr. Okor on December 12, 2008, and before his second operation in January 2009. (Tr. 222, 239, 241). Contrary to Plaintiff's argument, the ALJ was aware of this sequence of events since he gave Plaintiff "the benefit of the doubt" and reduced the RFC because Plaintiff had "undergone a fusion" since Dr. Heilpern's original assessment. (Tr. 21). However, the ALJ failed to lay out a persuasive rationale as to why his adjustment of the RFC is any more accurate than Dr. Heilpern's. In granting Plaintiff "the benefit of the doubt," the ALJ reduced Plaintiff's RFC to include a pain level of mild to moderate (which is reasonably expected to impose mild to moderate functional limitations on Plaintiff's ability to work), but failed to explain how the record supported this reduction. (Tr. 21). While it is within the ALJ's discretion to decide that Plaintiff failed to meet his burden in proving disability under the Act, the ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnoses of a medical professional." *Marbury v.*

*Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). Rather than making his own adjustment to Dr. Heilpern's assessment, the ALJ should have developed the record further in order to make an informed decision regarding Plaintiff's RFC after the January 2009 surgery since the other medical records offered no other opinion regarding Plaintiff's ability to work or how his new symptoms of arthritis or muscle spasms might affect his ability to work. *See Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citing *Ford v. Secretary of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981)).

  A more developed medical record was especially relevant to the testimony of the VE, which was crucial to the ALJ's determination that Plaintiff can still perform other work besides his past relevant work. (Tr. 22-23). In the first hypothetical question, the VE was asked to consider Dr. Heilpern's RFC assessment of Plaintiff, as well as the ALJ's modification of mild to moderate pain, and concluded that an individual with such disabilities would still be able to perform other jobs in the national economy. (Tr. 55-56). However, in the third hypothetical question, when asked to consider the same RFC used in the first hypothetical with the addition of arthritic flare-ups causing absences of at least one day per week, the VE concluded that an individual with such disabilities would be unable to maintain employment. (Tr. 57). The problematic method for determining the RFC used in these hypotheticals, as well as the evidence from Dr. Okor indicating that Plaintiff might suffer from arthritis, merits greater consideration from the ALJ in light of a more developed record.

  As the RFC assessment in this case is not supported by substantial evidence, was crucial to the VE's testimony, and thus crucial to the ALJ's finding for step five of the five-step analysis under

20 C.F.R. § 404.1520(g), this case is ripe for remand pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

> **B.** **The ALJ Adequately Reviewed Plaintiff's Subjective Complaints of Pain in Light of the Eleventh Circuit's Pain Standard and Relevant Medical Records.**

Plaintiff contends that the ALJ did not adequately consider his subjective complaints of pain and failed to provide a persuasive rationale for dismissing them. (Pl.'s Mem. 9-10). As a general rule, a claimant's statements about pain or other symptoms alone will not establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) (2012). In assessing the credibility of a claimant's subjective complaints, the Eleventh Circuit has established a three part pain standard, requiring "(1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

Once a claimant shows an underlying impairment that could reasonably produce his symptoms, the ALJ must evaluate the symptoms' intensity, persistence, and limiting effects and determine the extent of impairment. *See* 20 C.F.R. § 404.1529(c)(1) (2012). In doing so, the ALJ evaluates a claimant's statements in relation to the other evidence, such as his treatment records. *See* 20 C.F.R. § 404.1529(c)(3)-(4). After considering a claimant's subjective complaints, the ALJ may decide how much credibility they should be afforded. *See Marbury v. Sullivan*, 957 F.2d. 837, 839 (11th Cir. 1992).

In this case, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his statements "concerning the

intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC assessment. (Tr. 20). Standing alone, this rationale fails to justify the ALJ's finding regarding the credibility of Plaintiff's subjective complaints since the RFC assessment itself is not based on substantial evidence, as previously discussed. However, the ALJ also based his finding on Plaintiff's medical records, noting that the records "do not reveal that [Plaintiff] ever told his doctors that he had such limitations as inability to walk more than a city block or having to lie down for 2 hours a day." (Tr. 20). The ALJ also considered the treatments recommended to relieve Plaintiff's pain, as well as Dr. Okor's latest findings from December 2009, which found no evidence of hardware pullout or loosening, noted significant improvement in Plaintiff's leg pain, and theorized that any residual pain could be caused by arthritis or muscle spasms. (Tr. 21).

Plaintiff also argues that the ALJ failed to "accord any weight to the findings" of Dr. Hakima (Pl.'s Mem. 10). However, this argument makes a mountain out of a molehill. Nowhere in his opinion does the ALJ entirely discredit or dismiss Dr. Hakima's findings. He merely points out that Plaintiff underwent a fusion after Dr. Hakima's examination. (Tr. 21). In fact, it appears the ALJ implicitly accorded at least moderate weight to Dr. Hakima's findings since the ALJ accorded great weight to Dr. Heilpern's opinion, who in turn — at least in part — based his opinion on Dr. Hakima's findings given that he mentions them in response to the sixth item listed under exertional limitations. (Tr. 223).

Because the ALJ reviewed the medical records and cited specific instances in those records that support his credibility finding, it is not for this court to second-guess his determination or decide the facts anew. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also* Social Security Ruling 96-7p ("The determination or decision [of the ALJ] must contain specific reasons for the

13

finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight . . .").

## VI.    Conclusion

The court concludes that the ALJ's determination discrediting Plaintiff's subjective complaints of pain was based on substantial evidence and applied proper legal standards. However, the court also finds that the ALJ's determination of Plaintiff's RFC was not based on substantial evidence as he inordinately relied upon the opinion of a non-treating, non-examining physician that was not clearly supported by the record. The Commissioner's final decision is, therefore, due to be reversed and remanded, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this   21st   day of June, 2012.

                                                         **R. DAVID PROCTOR**
                                                         UNITED STATES DISTRICT JUDGE